IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RICKY STEPHENS )
)
       **Plaintiffs,** )
)
vs. )     CIVIL ACTION NO 05-0563-KD-C
)
TOWN OF BUTLER, ALABAMA, et al, )
)
       **Defendants.** )

## ORDER

This matter is before the Court on the motion to dismiss the claims against defendants Choctaw County Sheriff Donald Lolley and Choctaw County Deputy Sheriff Carl Jackson in plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 23), brief in support (Doc. 24), and plaintiff's response in opposition. (Doc. 29). For the reasons stated herein, the court concludes that the motion is due to be granted in part and denied in part.

## I.    Background

Plaintiff's complaint arises from his incarceration in the Choctaw County Jail on October 2, 2004. (Doc. 1, complaint; Doc. 22, Amended Complaint at ¶ 7). On October 4, 2005, plaintiff filed suit against the defendants pursuant to 42 U.S.C. § 1983 wherein plaintiff claims that defendants violated his rights under the Fourteenth Amendment to the United States Constitution. (Doc. 1). On November 29, 2005, plaintiff filed an amended complaint wherein he alleges the same claims against the defendants for violation of his rights under the Fourth Amendment. (Doc. 22). Pertinent to this motion to dismiss, plaintiff claims that his right to be free from excessive and unreasonable force was violated by defendants Town of Butler Police

Officer Henry Lovette and Deputy Jackson (Count I), that the actions of Deputy Jackson were performed pursuant to the unconstitutional policy and practice of Sheriff Lolley (Count IV), and that Sheriff Lolley failed to properly train and supervise Deputy Jackson (Count V).[1]  In both his complaint and his amended complaint, plaintiff alleges the following events occurred:

Officer Lovette transported plaintiff to the Choctaw County jail and escorted him to the docket room.  In the docket room Officer Lovette stood in front of plaintiff and talked with him as Deputy Jackson and Jailer Wallace stood behind.  Officer Lovette requested that plaintiff change from his street clothes into an inmate uniform and plaintiff failed to comply with the request.  Officer Lovette then told plaintiff that he was not going to wait any longer for plaintiff to comply,[2] backed plaintiff into a corner, and shot plaintiff "several" times with a Taser stun gun. Jailer Wallace said "that's enough" and Officer Lovette stopped.  Officer Lovette then told Deputy Jackson to shoot plaintiff in the leg with his Taser.  Deputy Jackson then removed the clip from his stun gun and shot plaintiff on plaintiff's "right torso as [he] twisted to his side and his shirt came up, exposing skin."  Officer Lovette and Deputy Jackson backed away and holstered the stun guns.  At that point, plaintiff put on his inmate uniform.  He then turned toward Deputy Jackson and put his hand on the door frame, Deputy Jackson then grabbed his wrist and pushed him "slightly" towards the jail cells.  Officer Lovette accompanied plaintiff to

_____

[1] Plaintiff also claims that the actions of Officer Lovette were performed pursuant to the unconstitutional policy and practice of the Town of Butler (Count II), that the Town of Butler failed to properly train and supervise Office Lovette and its other officers (Count III), and that Officer Lovette committed an assault and battery of plaintiff for which the Town of Butler is liable (Count VI), and that the Town of Butler negligently and wantonly supervised, hired, and retained Officer Lovette (Count VII). (Doc. 22).

[2] The allegations do not indicate the amount of time which lapsed between the request and the failure to comply.

the cell area while Deputy Jackson and Jailer Wallace remained behind.  Officer Lovette shot

him again in the neck as he walked into the cell and then in the back of his leg as soon as he

entered the cell.  At all times, plaintiff was not physical toward the officers nor did he resist.  As

a result, plaintiff was injured and suffered pain and "permanent bodily damage, emotional

distress, humiliation, and great fear that he will be subjected to similar treatment in the future."

(Docs. 1, 22).

In his amended complaint, plaintiff  adds the following factual allegations which are

subject to the defendants' motion to dismiss.  In regard to his claim that Sheriff Lolley allowed

an unconstitutional policy and practice, plaintiff alleges that the jailers under Sheriff Lolley's

supervision frequently and consistently used tasers on detainees, that up to two or three detainees

had been stunned in a week, that jailers had stunned detainees up to seven times in order to

secure their compliance, that a jailer had stunned a person in retaliation for saying something

displeasing, that a jailer had stunned a man who was sitting on a toilet, that jailers had threatened

inmates to frighten them and that a deputy had stunned an inmate severely to force him to enter

the jail. (Doc. 22, ¶ 20).

In regard to his claim that Sheriff Lolley failed to properly train and supervise his

deputies, plaintiff alleges that "family members of detainees had brought these issues to the

attention of Sheriff Lolley, who took no action, including increased supervision, training, or

discipline, to stop the conduct of his agents." (Id., ¶ 21).  Plaintiff also alleges that Sheriff Lolley

was "aware of some of these many incidents, but failed to stop them." (Id., ¶ 22).[3]

---

[3]   Plaintiff alleges that Sheriff Lolley "as a matter of policy and practice" and with
"deliberate indifference" failed to adequately discipline, train, or otherwise direct" his deputies,
including Deputy Jackson, "concerning the rights of citizens, thereby causing the aforesaid

II.    <u>**Standard of Review**</u>

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a

plaintiff's claim.  In the context of a motion to dismiss under Rule 12(b)(6) in an action pursuant

to § 1983, the Eleventh Circuit has held that

> A complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on
> their face, show that an affirmative defense bars recovery on the claim. . . .Once
> the affirmative defense of qualified immunity is advanced ⋯ unless the plaintiff's
> allegations state a claim of violation of clearly established law, a defendant
> pleading qualified immunity is entitled to dismissal before the commencement of
> discovery. . . . Absent such allegations, it is ⋯ appropriate for a district court to
> grant the defense of qualified immunity at the motion to dismiss stage. . . .  Thus,
> if the defendants in this case are entitled to qualified immunity, then their Rule
> 12(b)(6) motion to dismiss must be granted and the plaintiffs' suit must be
> dismissed.

<u>Cottone v. Jenne</u>, 326 F.3d 1352, 1357 (11th Cir. 2003) (citations and internal quotations

omitted); <u>see</u> <u>also</u> <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc)

Also, the facts alleged by plaintiff must be taken as true and uncontradicted, <u>United States v</u>

<u>Gaubert</u>, 499 U.S. 315, 327 (1991),[4]  and viewed in a light most favorable to plaintiff. <u>Manuel v.</u>

<u>Convergys Corp.</u>, 430 F.3d 1132, 1139 (11th Cir. 2005).   However, "unsupported conclusions of

law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6)

dismissal." <u>Koger v. Florida,</u> 130 Fed. Appx. 327, 332 (11th Cir. 2005) (citations omitted and

---

officers in this case to engage in the unlawful conduct described above." (<u>Id</u>., ¶ 23).  Plaintiff
also alleges that "as a matter of policy and practice" and with "deliberate indifference", Sheriff
Lolley has "failed to properly sanction or discipline" his deputies, including Deputy Jackson "for
violations of the constitutional rights of citizens, thereby causing police and deputies, including
the aforesaid officers in this case, to engage in unlawful conduct." (Doc. 22, ¶ 24).

    [4]  The Eleventh Circuit also instructs that "[g]iven the Rule 12(b)(6) posture of the case,
we first review the allegations of the amended complaint as if all the allegations contained
therein were true." <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1355 (11th Cir. 2003).

quotations omitted). On the other hand, "[a]ll well-pleaded facts in plaintiff's complaint and all reasonable inferences drawn from those facts are taken as true." Id.

Additionally, when a governmental official is sued in their individual capacity and asserts a qualified immunity defense as defendants  herein, discussed infra, Eleventh Circuit precedent requires a "heightened pleading" standard for the complaint. Washington v. Bauer, 149 Fed. Appx. 867, 870-871 (11th Cir. 2005) citing Laurie v. Alabama Court of Criminal Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001) ("[T]here is a heightened pleading requirement when a plaintiff brings a §1983 complaint against officials acting in their individual capacities."). When the heightened pleading standard applies, "the complaint must allege relevant facts 'with some specificity.'" Dalrymple v. Reno,  334 F.3d 991, 996 (11th Cir. 2003) quoting GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998).  To do so, "'[m]ore than mere conclusory notice pleading is required'" and "'a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.'" Dalrymple, 334 F. 3d at 996 (citations omitted).

## III.    Application of the Fourth or Fourteenth Amendment

As defendants point out, plaintiff initially pled under the Fourteenth Amendment of the United States Constitution (Doc. 1) but in his amended complaint (Doc. 22), pled under the Fourth Amendment.  The court has carefully reviewed the factual allegations in the complaint and finds that there are no allegations to support a Fourth Amendment claim.  The Fourth Amendment protects against unreasonable search and seizure and thus against excessive force administered during an arrest.  The acts alleged in the complaint assert that excessive force was used while plaintiff was at the docket room of the jail and being processed into the jail.  The

5

arrest or seizure of plaintiff occurred before he was taken there for docketing.  Thus, at that time, plaintiff's status was in the nature of a pretrial detainee. See Bell v. Wolfish, 441 U.S. 520, 537, 99 S.Ct. 1861, 1873 (U.S. 1979) (identifying pretrial detainees as "those persons who have been charged with a crime but who have not yet been tried on the charge").  Therefore, the court concludes that the proper analysis is under the Fourteenth Amendment, discussed infra, as it pertains to pretrial detainees and not under the Fourth Amendment. Accordingly, plaintiff is **GRANTED** leave to file an amendment to Count 1 of his amended complaint to establish that his claim of excessive force is brought pursuant to the Fourteenth Amendment within **ten (10) days of this order**.  Plaintiff is admonished that his failure to do so will result in a revision to this order wherein plaintiff's claim of excessive force under the Fourth Amendment will be dismissed for failure to allege a constitutional violation.[5]

## IV.    Capacity in which plaintiff has sued Sheriff Lolley

In his response to the motion to dismiss, plaintiff argues that he is suing Sheriff Lolley in his official capacity. (Doc. 29).  In their reply, defendants argue that the amended complaint indicates that Sheriff Lolley is sued in his individual capacity. (Doc. 30).  The capacity in which Sheriff Lolley is sued is material because as discussed in the pleadings, the defenses available vary with the capacity.[6]  Therefore, the court will determine in which capacity plaintiff has sued

---

[5] The court recognizes the unusual posture of ruling on a claim that is yet to be formally asserted.  However this procedure is employed in an effort to move this case in an efficient and expeditious manner.

[6] Generally, an "official capacity" suit against a government official is considered a suit against the office.  Kentucky v. Graham, 473 U.S. 159, 165-166, 105 S. Ct. 3099 (1985).  In Alabama, a Sheriff's authority over the jail "is independent of the county commission" and he

Sheriff Lolley based upon a review of the complaint and amended complaint.

In paragraph four of his initial complaint and his amended complaint, plaintiff states as follows:

> Donald Lolley (Lolley) is the Sheriff of Choctaw County, Alabama.  He is sued for action done under color of state law in his individual capacity.

(Docs. 1, 22, p. 2).[7]  Also, plaintiff seeks punitive damages which are available only if Sheriff Lolley is sued in his individual capacity (Doc. 22, Prayer for Relief, paragraph D "Award the Plaintiff punitive damages against Defendants Lolley, Lovette and Jackson[.]" [8]  Thus, the court concludes that plaintiff has sued Sheriff Lolley in his individual capacity and thus Sheriff Lolley may raise the defense of qualified immunity.

---

acts for the State of Alabama.  Marsh, 268 F.3d at 1027-1028.  Therefore, he is considered an arm of the state and protected by sovereign immunity under the Eleventh Amendment in official capacity suits.  Id.  In his official capacity, Sheriff Lolley may not raise a qualified immunity defense. Id. at 1024, n.4.

[7] Plaintiff also refers to Sheriff Lolley in his individual capacity in the caption of the complaint: "Donald Lolley, Sheriff of Choctaw County, Alabama, in his individual capacity". The court notes that the caption is not in conflict with plaintiff's statement of his claim and does not create an ambiguity.  See Marsh, 268 F.3d at 1024 n.4 ("The caption is chiefly for the court's administrative convenience.  It may, however, sometimes be useful to look at the caption - when the Rule 8 statement of a claim is ambiguous about a party's capacity - to settle pleading ambiguities. See Hobbs v. E.E. Roberts, 999 F.2d 1526, 1529-30 (11th Cir.1993) (using several factors, including caption, to resolve ambiguity of whether official sued in official or individual capacity). To use the Rule 10 caption to create an ambiguity when the statement of the claim is itself not ambiguous is incorrect.").

[8] In Adams v. Franklin, the District Court for the Middle District of Alabama addressed whether Adam's unclear pleadings indicated that he was proceeding against the defendants in their individual or official capacity and found as follows:  "In § 1983 actions, punitive damages are only available from government officials when sued in their individual capacities.[]  Because Plaintiff may not obtain punitive damages from Defendants in their official capacities, the logical inference is that Plaintiff seeks punitive damages from Defendants in their individual capacities." Adams v. Franklin,111 F. Supp.2d 1255, 1262 (M.D. Ala. 2000) (citations omitted).

**V.**    **Discussion**

Plaintiff brings claims against defendant Deputy Jackson for violation of his constitutional right to be free of excessive and unreasonable force and against defendant Sheriff Lolley for maintaining an unconstitutional custom or policy and failure to train and supervise Deputy Jackson and other deputies. (Doc. 22).  Defendants move this court to dismiss the claims against them in plaintiff's amended complaint pursuant to Rule 12(b)(6).  Sheriff Lolley and Deputy Jackson argue that plaintiff's amended complaint makes only conclusory factual allegations which cannot survive a motion to dismiss and that the claims are due to be dismissed because they are entitled to qualified immunity. (Docs. 23, 24).

Defendants also request oral argument on the motion to dismiss. (Doc. 23).  However, the court finds that upon review of the pleadings, oral argument is not necessary to resolve the issues presented.  Thus, their request is denied.

**A.**    **Qualified Immunity Defense**

Deputy Jackson and Sheriff Lolley have raised the defense of qualified immunity.  Under this doctrine "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).  The importance of a decision to dismiss a complaint under Rule 12(b)(6) based on a defense of qualified immunity was discussed in Marsh, wherein the Eleventh Circuit explained that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Marsh, 268 F.3d at 1021 quoting Mitchell

8

v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 2815 (1985) and citing Behrens v. Pelletier, 516 U.S.

299, 116 S.Ct. 834, 840 (1996) ("At the [12(b)(6)] stage, it is the defendant's conduct *as alleged*

*in the complaint* that is scrutinized for 'objective legal reasonableness.'") (italics in original).

The Eleventh Circuit recently discussed the inquiry for reviewing a qualified immunity

defense and set forth as follows:

> The defense of qualified immunity completely protects government officials
> performing discretionary functions from suit in their individual capacities unless
> their conduct violates clearly established statutory or constitutional rights of
> which a reasonable person would have known." Cottone v. Jenne, 326 F.3d 1352,
> 1357 (11th Cir.2003) (internal quotation marks and citations omitted). "To receive
> qualified immunity, a government official first must prove that he was acting
> within his discretionary authority." Id. at 1357-58 (citation omitted). . . . "Once a
> defendant establishes that he was acting within his discretionary authority, the
> burden shifts to the plaintiff to show that the defendant is not entitled to qualified
> immunity." Id. at 1358. The Supreme Court has established a two-part test to
> determine the applicability of qualified immunity. "The threshold inquiry a court
> must undertake in a qualified immunity analysis is whether [the] plaintiff's
> allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S.
> 730, 736, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002) (citation omitted). "If,
> under the plaintiff's allegations, the defendants would have violated a
> constitutional right, 'the next, sequential step is to ask whether the right was
> clearly established.'" Cottone, 326 F.3d at 1358 (quoting Saucier v. Katz, 533
> U.S. 194, 201, 121 S.Ct. 2151, [2156] 150 L.Ed.2d 272 (2001)).

Migut v. Flynn, 131 Fed. Appx. 262, 264, 2005 WL 1130373, 1-2 (11th Cir. 2005) (unreported

opinion).

Thus, the qualified immunity analysis consists of three steps: a determination of whether

the defendants were acting within the scope of their discretionary authority, whether their actions

violate plaintiff's constitutional rights, and whether the right was clearly established at the time

of the violation.   The court will first address whether defendants were acting within the scope of

their discretionary authority.

###### 1.    <u>Acting within their discretionary authority</u>

Because Sheriff Lolley and Deputy Jackson have asserted a qualified immunity defense, the burden of proving that their actions were within their discretionary authority rests with them. <u>Harbert Intern., Inc. v. James</u>, 157 F. 3d 1271, 1282 (11th Cir. 1998); <u>Kesinger ex rel. Estate of Kesinger v. Herrington</u>, 381 F.3d 1243, 1248 (11th Cir. 2004) ("[I]n order to receive qualified immunity, the public actor must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.").  Failure to satisfy this burden negates the qualified immunity defense. <u>See</u>  <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1264 (11th Cir. 2004).  To determine whether defendants have met this burden the court may look to "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." <u>Harbert Intern.</u>, 157 F. 3d at 1282 (citation omitted).  Also, the court may look to "whether the government employee was (a) pursuing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." <u>Holloman,</u> 370 F.3d at 1265-1266 (citations omitted).  When the defendants establish that they were acting within their discretionary authority, "the burden shifts to the plaintiff to show that the defendant[s are] not entitled to qualified immunity." <u>Cottone,</u> 326 F.3d at 1358.

###### a.    <u>Sheriff Lolley</u>

Defendants argue that all of plaintiff's allegations with respect to Sheriff Lolley are based upon his role as the Sheriff of Choctaw County and it is in that capacity that he has the ability to train and supervise deputies and promulgate policies or practices. (Doc. 24).  Plaintiff concedes

that Sheriff Lolley has discretionary authority in regard to training and supervising the deputies but plaintiff fails to raise any argument regarding Sheriff Lolley's discretionary authority to promulgate policies or practices for the Sheriff's Department or the jail. (Doc. 29).  Thus, because plaintiff concedes on one issue and raises no argument as to the other, the court concludes that Sheriff Lolley has met his burden of establishing that he was acting within his discretionary authority.

        b.     **<u>Deputy Jackson</u>**

Defendants argue that Deputy Jackson was acting within his discretionary authority because he was "a sworn peace officer employed by the Sheriff of Choctaw County, operating under State law" as alleged in plaintiff's complaint and that "[i]t is only in this capacity that [he] had any reason to deal with an inmate of the [] jail including plaintiff." (Doc. 24).  Defendants argue that plaintiff has not meet his burden of rebutting their argument by simply questioning the relationship between the Town of Butler and Choctaw County as to the operation of the county jail or questioning the scope of Deputy Jackson's actual duties. (Doc. 30).

Plaintiff alleges that Deputy Jackson "is a sworn peace officer employed by the Sheriff of Choctaw County, operating under State law, and sued in his individual capacity" and argues that Deputy Jackson has not established "based upon the facts alleged in the complaint" that he was acting within his discretionary duties.  Plaintiff questions Deputy Jackson's actual duties and the allocation of duties, authority, operation, and ownership between the Town of Butler and Choctaw County as to the jail. (Docs. 1, 22, 29).

The Eleventh Circuit has held that the defendant must establish objective circumstances

11

to support a conclusion that "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988) quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981) [9]; see also Parks v. City of Carrollton, 2005 WL 2219072, *6 (11th Cir. 2005) citing Hudgins v. City of Ashburn, Ga., 890 F.2d 396, 404 (11th Cir. 1989) (holding that a government official acts in his discretionary authority where "objective circumstances ⋯ compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority."). Also, in Holloman, the Eleventh Circuit explained as follows:

> As we explained in Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (quotation marks and citation omitted), however, "the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances.

370 F.3d at 1266.

The facts alleged show that prior to the tasing incident, summarized supra, Deputy Jackson walked behind Officer Lovette and plaintiff as they entered the jail and that in the docket room Officer Lovette stood in front and talked with plaintiff as Deputy Jackson and Jailer Wallace stood behind.  Looking to the "general nature" of Deputy Jackson's actions, including tasing plaintiff and shoving him slightly toward the jail cell, if done for a "proper purpose", Harbert Intern., 157 F. 3d at 1282, such as obtaining compliance with a request, or assisting or

---

[9]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions entered prior to close of business on September 30, 1981.

providing security for Officer Lovette and Jailer Wallace with processing plaintiff into the jail
and to maintain or restore order, undeniably would be related to Deputy Jackson's official
discretionary duties as a "sworn peace officer".  Thus, the court concludes that Deputy Jackson
was acting within his discretionary authority as a sworn peace officer for Choctaw County.[10]

In his response, plaintiff argues that "[t]he amended complaint alleges, and it is assumed,
that Deputy Jackson was what is called a 'road deputy' meaning his duties consist of patrolling
and arresting suspects and transporting them to a correctional facility. What are Deputy
Jackson's duties, responsibilities, and authority once an inmate is brought within the jail?" (Doc.
29).  Thus, although plaintiff attempts a rebuttal by raising this question and the relationship
between the County and the City as to the jail, plaintiff does not provide any factual allegations
that Deputy Jackson's duties did not include entering the jail with Officer Lovette and standing
by other than plaintiff's conclusory allegation raised in the frame of a question.

## 2.    Violation of a clearly established constitutional right

The defendants having met their burden of establishing that they were acting within their
discretionary authority, the burden shifts to plaintiff to demonstrate that the defendants are not
entitled to qualified immunity. Cottone, 326 F.3d at 1358;  Crosby v. Monroe County, 394 F.3d

---

[10]  See also Morris v. Wallace Community College-Selma, 125 F. Supp.2d 1315, 1337
(S.D. Ala. 2001) (In some cases, the very nature of the job will make it obvious that the
defendant acted within his discretionary authority. See, e.g., Adams v. St. Lucie County Sheriff's
Department, 962 F.2d 1563, 1568 (11th Cir. 1992) ('It is axiomatic that a law enforcement officer
has the discretionary authority to pursue and apprehend a fleeing suspected offender.'), vacated
on other grounds, 982 F.2d 472 (11th Cir. 1993)").

1328, 1332 (11ᵗʰ Cir. 2004).  To do so, plaintiff must show by allegation of sufficient facts that defendants violated plaintiff's constitutional rights, <u>Crosby</u>, 394 F. 3d at 1332; <u>Marsh,</u> 268 F. 3d 1022, and that the constitutional rights in question were clearly established such that the defendants had fair warning that their conduct was constitutionally prohibited. <u>Saucier</u>, 533 U.S. at 201, 121 S.Ct. at 2156 (2001).  "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." <u>Hope</u>, 536 U.S. at 736, 122 S.Ct. at 2513 (2002) (citation and internal quotations omitted).  However, there need not be a prior court decision based upon the same set of facts but "in the light of pre-existing law the unlawfulness must be apparent." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S. Ct. 3034, 3040 (1987).  <u>Hope</u> guides that the "salient question . . .  is whether the state of the law . . .  gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional. 536 U.S. at 731, 122 S. Ct at 2511.

In <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1349-51 (11ᵗʰ Cir. 2002), the Eleventh Circuit stated that "fair and clear" notice may exist in three circumstances.  "First, the words of the pertinent federal statute or federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law." <u>Id.</u> at 1350 (footnote omitted).   The Circuit Court reasoned that "[t]his kind of case is one kind of 'obvious clarity' case.  For example, the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." <u>Id.</u> (footnote omitted).  Second, "if the conduct is not so egregious as to violate [a constitutional amendment] on its face, we then *turn to case law.*  When looking at case law, some broad

14

statements of principle in case law are not tied to particularized facts and can be clearly

established law applicable in the future to different sets of detailed facts." Id. citing Marsh, 268

F. 3d at 1031-32, n.9 (italics in original).  The Circuit Court reasoned that "[t]hese judicial

decisions can control 'with obvious clarity' a wide variety of later factual circumstances." Id. at

1351; see id n.20 ("See United States v. Lanier, 520 U.S. 259, 271, 117 S.Ct. 1219 (1997) (. . . "a

general constitutional rule already identified *in the decisional law* may apply with obvious

clarity to the specific conduct in question, even though the very action in question has [not]

previously been held unlawful". . . )).  Third, the Circuit Court stated that "if we have no case

law with a broad holding of 'X' that is not tied to particularized facts, we then look at precedent

*that is tied to the facts*.  That is, we look for cases in which the Supreme Court has said that 'Y

Conduct' is unconstitutional in 'Z Circumstances.'" Id.  Thus, "if the circumstances facing a

government official are not fairly distinguishable, that is, are materially similar, the precedent

can clearly establish the applicable law." Id. at 1352.

   With this in mind, the court will first address whether, viewing the facts alleged as true,

plaintiff's constitutional rights have been violated.  If so, the court will then address whether the

rights were "clearly established statutory or constitutional rights of which a reasonable person

would have known." Cottone, 326 F.3d at 1358; Bozeman v. Orum, 422 F.3d 1265, 1271(11th

Cir. 2005); see also Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005) (official performing

discretionary function is barred from qualified immunity if evidence in light most favorable to

plaintiff shows that official's conduct violated clearly established constitutional right).


   a.   **Deputy Jackson**

Defendants argue that Deputy Jackson's actions do not meet the necessary factors to establish a violation of plaintiff's constitutionally protected right to be free from cruel and unusual punishment, i.e, excessive force.  Defendants argue that Deputy Jackson by tasing plaintiff one time and slightly shoving him toward a jail cell did not act in a malicious or sadistic manner but instead acted in a good faith effort to maintain or restore discipline and safety. Defendants argue that Deputy Jackson used only the force necessary and tempered the force used by removing the clip which prevented two barbed darts from being fired.  Defendants also argue that plaintiff has not established an injury but argues only that he was injured.  Defendants also argue that under either a Fourteenth or Fourth Amendment analysis, plaintiff's facts accepted as true, do not establish a constitutional violation. (Docs. 24, 30)

Plaintiff argues that this case should be analyzed under the Fourth Amendment's guarantee of the right to be free from unreasonable search and seizure instead of the Eighth Amendment's Cruel and Unusual Punishment clause.[11]  In addition to the allegations of fact in the complaint regarding the tasing and shoving incident, plaintiff points out that "three officers, not one, confronted [him] in a confined room inside the jail" and that the facts should be explored as to whether defendants had "cause to fire even one taser burst." (Doc. 29).

As previously stated supra, the court has determined that because this case involves a

---

[11]  Plaintiff argues that under the Fourth Amendment, "[t]o determine if the force was reasonable the 'courts must examine (1) the need for the application of force, (2) the relationship between the need and the amount of force used, and (3) the extent of the injury inflicted.' Lee v. Ferraro, 284 F.2d at 1197-98.  The courts must balance the necessity of the use of force used against the arrestee's Constitutional rights and to do so by 'evaluating several factors including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."Graham v. Connor, 490 U.S. at 396; Vinyard v. Wilson, 311 F.3d at 1347." (Doc. 29).

pretrial detainee, it should be analyzed under the Due Process Clause of the Fourteenth

Amendment.  In <u>Bell v. Wolfish,</u> the Supreme Court held that in "evaluating the constitutionality

of conditions or restrictions of pretrial detention" the inquiry is "whether those conditions

amount to punishment of the detainee." 441 U.S. at 535, 99 S.Ct. at 1872.  The Supreme Court

also determined that

> under the Due Process Clause, a detainee may not be punished prior to an
> adjudication of guilt in accordance with due process of law. [] A person lawfully
> committed to pretrial detention has not been adjudged guilty of any crime. . . .
> Under such circumstances, the Government concededly may detain him to ensure
> his presence at trial and may subject him to the restrictions and conditions of the
> detention facility so long as those conditions and restrictions do not amount to
> punishment, or otherwise violate the Constitution.

<u>Bell,</u> 441 U.S. at 537-538, 99 S.Ct. at 1873.  <u>Bell</u> makes clear that under the Fourteenth

Amendment, any punishment of a pretrial detainee before an adjudication of guilt would result in

a violation of that detainee's constitutional rights.  <u>See</u> <u>McMillian v. Johnson</u>, 88 F. 3d 1554,

1565 (11th Cir. 1996) ("Bell's prohibition on *any* pretrial punishment, defined to include

conditions imposed with an intent to punish should have made it clear to all reasonable officials

in [the defendants'] place that holding McMillian on death row to punish him before he was tried

violated McMillian's due process rights.")

However, force may be applied in a custodial setting if it is applied in a "good faith effort

to maintain or restore discipline [but not] maliciously or sadistically to cause harm." <u>Whitley v.

Albers</u>, 475 U.S. 312, 320-21, 106 S.Ct. 1078 (1986) (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028,

1033 (2nd Cir.1973)).  In <u>Johnson v. Breeden,</u> 280 F.3d 1308 (11th Cir. 2002), the Eleventh

Circuit stated that intent or motivation should be considered and that a "purpose to punish is an

essential element of a pretrial punishment claim under the Fourteenth Amendment".  <u>Id.</u> at 1321.

The Circuit Court also identified this "subjective element" as whether  "the force was used and the injury inflicted not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm to the plaintiff." Id. at 1321; see Bozeman, 422 F.3d at 1271 ("whether or not a prison guard's application of force is actionable turns on whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm.") (citations and internal quotation marks omitted).   The Circuit Court explained that to establish a claim, plaintiff must make this showing and also establish that his injury was more than de minimus. Id.  In Johnson, the Eleventh Circuit found that when these elements have been met "there is simply no room for a qualified immunity defense".  Id. at 1321; see also Bozeman, 422 F.3d at 1272.

Therefore, this court must next consider whether Deputy Jackson's application of force was applied in good faith in an "effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm" and therefore a violation of plaintiff's constitutional right.  Bozeman, 422 F.3d at 1271 (quotation omitted).  The court may consider the following factors: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Skrtich v. Thornton, 280 F.3d 1295, 1300-1301 (11th Cir. 2002) (quoting Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S.Ct. 995 (1992).  From these factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321, 106 S.Ct. 1078 (quoting Johnson v. Glick, 481 F.2d at 1033).

18

At the motion to dismiss stage, the court must accept as true the facts alleged by plaintiff. The facts as summarized supra establish that Deputy Jackson tased plaintiff one time and afterward grabbed his wrist and slightly shoved plaintiff toward the cell. The taser shot caused pain, although plaintiff has not alleged any specific pain from his wrist or slight shove. Plaintiff was not physical toward the officers and did not resist. Plaintiff had no opportunity to comply with Officer Lovette's request before Deputy Jackson tasered him at Officer Lovette's request. Officer Lovette had previously tased plaintiff several times before Jailer Wallace's statement- "That's enough"- to Deputy Jackson and Officer Lovette. After that statement, Officer Lovette told Deputy Jackson to shoot plaintiff with his taser which he did. Officer Lovette then tased plaintiff again in his cell. (Docs. 1, 22).

Although defendants argue that Deputy Jackson tempered his response to the circumstance by removing the clip and firing only once,[12] the single tasing is alleged to have occurred after a series of tasings by Officer Lovette and after Jailer Wallace's statement of "That's enough." Also, plaintiff's allegations indicate that he was not resistant or physical. Additionally, it is a reasonable inference from the allegations that plaintiff was not given time to comply with the request to change into the prison uniform after Officer Lovette tased him several times but before Deputy Jackson's single taser shot. These allegations, considered together are sufficient to allow a "reasonable inference" to be drawn that Deputy Jackson tased plaintiff

---

[12] Defendants rely primarily on Draper v. Reynolds, 369 F. 3d 1270 (11th Cir. 2004) as Eleventh Circuit precedent that a single taser shot is not "excessive force". In Draper, the police officer was alone when he stopped a truck driver for a traffic violation. He asked the driver to obtain his truck documents five times. The driver was irate, pacing and yelling and thus arguably threatening to the lone police officer when the officer shot the driver with his taser. Draper is not factually similar because although Deputy Jackson tased plaintiff once, his tasing was part of a series and can not be viewed in isolation.

"*after* the threat had subsided and . . . in a malicious way for the very purpose of causing harm." Bozeman, 422 F.3d at 1272 (italics in original).[13]  Based upon these assumed facts, analyzed under the heightened pleading standard, supra, the courts finds that a conclusion could reasonably be drawn that Deputy Jackson's use of force was for the purpose of causing harm and not to restore order, and therefore, punitive and in violation of the Fourteenth Amendment.[14]

As discussed supra, the Supreme Court's decision in Bell v. Wolfish, clearly establishes that any use of force for the purpose of punishment of a pretrial detainee violates the Fourteenth Amendment.  Bell's holding falls within the second method for establishing "fair and clear notice" discussed in Vinyard, supra, wherein the Eleventh Circuit explained that "if the conduct is not so egregious as to violate [a constitutional amendment] on its face, we then *turn to case law.*  When looking at case law, some broad statements of principle in case law are not tied to particularized facts and can be clearly established law applicable in the future to different sets of

---

[13]  "Mainly the testimony of inmate Falls allows a reasonable inference to be drawn that the Officers continued to apply force to Haggard after the threat had subsided and that they did so in a malicious way for the very purpose of causing harm. Before entering Haggard's cell the Officers threatened to "kick [Haggard's] ass" and said that Haggard would be in for a "rude awakening" if the Officers had to come into the cell. [] Once the Officers had subdued Haggard on his bunk, they held him there face-down while another officer pushed Haggard's head into the mattress. After Haggard told the Officers he wished to give up and that he had had enough, one of the Officers replied, "Oh, we don't think you've had enough." []  The Officers then continued to apply pressure to Haggard until Falls heard a sound like "the wind went out [of Haggard]." Bozeman, 422 F.3d at 1271-1272 (11th Cir. 2005) (footnotes omitted)

[14]  Because this determination is made at the motion to dismiss stage, this conclusion does not preclude consideration of the facts again at the motion for summary judgment stage or at trial. See Johnson, 280 F. 3d at 1317 ("Where it is not evident from the allegations of the complaint alone that the defendants are entitled to qualified immunity, the case will proceed to the summary judgment stage, the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation.") (citation omitted).

detailed facts." 311 F.3d 1350-1351 citing <u>Marsh</u>, 268 F. 3d at 1031-32, n.9 (italics in original).

Also, the decisions in <u>Johnson</u>, 280 F. 3d 1308 and <u>Bozeman,</u> 422 F.3d 1265, support a finding

that force applied after a detainee is subdued and no longer a threat to the safety of the officers or

to maintaining order in the jail or prison, constitutes excessive force.  Moreover, in <u>Johnson</u> and

<u>Bozeman</u>, the Eleventh Circuit found that where force was applied after the threat of harm had

subsided, <u>i.e.</u>, excessive force, "there is no room for qualified immunity." <u>Bozeman</u>, 422 F.3d at

1272 quoting <u>Johnson</u>, 280 F 3d at 1321-1322.  Although ultimately, plaintiff has the burden to

establish any constitutional violation, taking the allegations in the complaint as true, the court

must at this stage find that plaintiff has stated a claim for violation of his clearly established

constitutional right under the Fourteenth Amendment.  Accordingly, the court finds that Deputy

Jackson's motion to dismiss on the basis of qualified immunity is **DENIED**.


        **b.**     **<u>Sheriff Lolley</u>**

Sheriff Lolley raises his defense of qualified immunity and argues that plaintiff has not

identified a policy promulgated by him, thus there could be no obvious, flagrant or rampant

deprivations of which he was subjectively aware to lead him to conclude his policies were

insufficient.  Specifically, Sheriff Lolley argues that the complaint contains only vague

allegations of other tasing incidents and no specific allegation that Deputy Jackson had

previously tased anyone, thus there are no allegations in the complaint to establish a custom or

practice.  Sheriff Lolley argues that because there was no custom or practice, it is impossible to

conclude that he was subjectively aware of such or that it presented an objectively serious risk of

harm.  Sheriff Lolley also argues that no facts were alleged to establish that he knew Deputy

Jackson required additional training or supervision or that Deputy Jackson had used improper

force on any other occasion, or that Sheriff Lolley was aware of a serious risk that Deputy

Jackson would deprive a citizen of a protected right.  He also argues that the vague and

conclusory allegations in paragraphs twenty through twenty-three do not meet the heightened

pleading standard required under a qualified immunity defense. (Docs. 24, 30).

Plaintiff argues that Sheriff Lolley's deliberate indifference to tasing incidents at the jail

resulted in the tasing incident in which he was harmed and thus his constitutional rights were

violated.  Plaintiff states that he has alleged sufficient facts to establish that Sheriff Lolley was

aware of widespread and indiscriminate use of the tasers against inmates at the County jail and

that these incidents showed an obvious need for Sheriff Lolley to change his policy and custom

of failing to train and supervise his employees regarding use of the tasers.  Plaintiff points out

that Sheriff Lolley's liability is not predicated only on whether he knew Deputy Jackson had

been involved in prior tasing incidents or he knew of the need to train or supervise Deputy

Jackson, but instead the issue is whether there were widespread incidents of improper taser use

of which Sheriff Lolley was aware but was deliberately indifferent that resulted in plaintiff's

injury. (Doc. 29).[15]

The court has determined that plaintiff's allegations regarding the tasing incident, at least

for purposes of this motion to dismiss, sufficiently state a violation of plaintiff's rights under the

---

[15]  Plaintiff argues that because his claim is against the Sheriff as a public entity and not
in his individual capacity, the Sheriff can not claim qualified immunity, therefore, the heightened
pleading standard does not apply. (Doc. 29). However, the court determined that plaintiff sued
Sheriff Lolley in his individual capacity, see supra.

Fourteenth Amendment by Deputy Jackson.  Since Sheriff Lolley has raised the defense of

qualified immunity and established that he was acting within his discretionary authority, the

court next turns to whether his actions, again accepting plaintiff's allegations as true, result in

liability on the basis of supervisory liability under § 1983 for Deputy Jackson's use of excessive

force against plaintiff.  See Marsh, 268 F.3d at 1021 ("Unless the plaintiff's allegations state a

claim of violation of clearly established law, a defendant pleading qualified immunity is entitled

to dismissal before the commencement of discovery.") (quotations and citations omitted).

As an initial consideration, Sheriff Lolley can not be held liable for Deputy Jackson's

acts on the basis of respondeat superior or vicarious liability under § 1983. Hartley v. Parnell,

193 F.3d 1263, 1269 (11th Cir.1999).  Also, plaintiff has not alleged that Sheriff Lolley

personally participated in the tasing incident. Cottone, 326 F.3d 1361. ("[S]upervisory liability

under § 1983 occurs either when the supervisor personally participates in the alleged

unconstitutional conduct or when there is a causal connection between the actions of a

supervising official and the alleged constitutional deprivation."); see also Miller v. King, 384 F.

3d 1248, 1261 (11th Cir. 2004).

Therefore, plaintiff must allege sufficient facts which, if accepted as true by this court at

this motion to dismiss stage, establish that there was a causal connection between Sheriff

Lolley's actions and the use of excessive force by Deputy Jackson when he tased plaintiff.  "A

causal connection may be established when: 1)  a "history of widespread abuse" puts the

responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails

to do so; 2) a supervisor's custom or policy [in this case, Sheriff Lolley's failure to train his

deputies regarding the use of tasers] results in deliberate indifference to constitutional rights; or

3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." Cottone, 326 F. 3d 1352, 1360 (11th Cir. 2003); see also Hartley, 193 F.3d at 1263.

The "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences". Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); see also Post v. City of Ft. Lauderdale, 7 F.3d 1552,1560-61 (11th Cir.1993) ("The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.").

Supervisor liability may also exist under § 1983 if an employee has not been adequately trained and a constitutional wrong is caused by that failure to train. City of Canton v. Harris, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204 (1989); Gilmere v. Atlanta, 774 F.2d 1495, 1503-1504 (11th Cir.1985).  Failure to properly train can be considered a "policy or custom" that gives rise to § 1983 liability when such failure reflects deliberate indifference to the constitutional rights of citizens. City of Canton, 489 U.S. at 388-92, 109 S.Ct. at 1204-07 (1989); Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991).  The failure to train must, in some relevant respect, evidence "a 'deliberate indifference' to the rights of" citizens. Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489-90 (11th Cir. 1997), cert. denied, 522 U.S. 1075, 118 S.Ct. 852 (1998), quoting City of Canton, 489 U.S. at 389, 109 S.Ct. at 1205; Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

However, a claim based upon an isolated incident is generally insufficient to sustain a claim for failure to train because those officials who are responsible for creating a policy must be on notice of the constitutional deficiencies.  McCurry v. Moore, 242 F. Supp.2d 1167, 1177

24

(N.D. Fla. 2002); see also Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994) (In order for a plaintiff to demonstrate a policy or custom, it is "generally necessary to show a persistent and wide-spread practice.") (internal quotations and citations omitted). Rather, there must be evidence of a history of abuse such that the supervisor has been put on notice. See Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990) (sheriff's department could not be liable for the actions of a deputy unless there was evidence "of a history of widespread prior abuse" such that the sheriff was "on notice of the need for improved training or supervision."); see also Church v. City of Huntsville, 30 F.3d 1332, 1342-46 (11th Cir. 1994) (holding plaintiff's claims could not succeed without proof that the City had knowledge of prior incidents); Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir. 1990) (no liability for failure to train when no pattern of incidents put the City on notice of a need to train), cited in Gold v. City of Miami, 151 F.3d at 1350-51.

Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. See Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360, quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003).

The Supreme Court guides that a prison official cannot be deemed deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994).[16]  The Eleventh Circuit has construed that requirement as mandating proof of each of the following three facts: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citation omitted).  In Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999), the Eleventh Circuit addressed the subjective component of the deliberate indifference analysis and found that post-Farmer, the plaintiff must present evidence of an official's subjective knowledge. See also Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir.1996) (recognizing Farmer's rejection of a solely objective test for deliberate indifference and the requirement of subjective awareness). "[S]ubjective knowledge" means that "liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of an excessive risk to inmate health or safety.... Proof that the defendant should have perceived the risk, but did not, is insufficient."

---

[16] The Eleventh Circuit in Cottrell v. Caldwell, 85 F.3d 1480 (11th Cir. 1996) held that "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. . . .  However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." Id. at 1490 (citations omitted); see Bozeman, 422 F.3d at 1271 ("But it makes no difference whether [plaintiff] was a pretrial detainee or a convicted prisoner because the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pretrial detainees.") (citations and internal quotations omitted).

Campbell, 169 F.3d at 1364 (citation omitted).

As previously stated supra, in his amended complaint, in addition to the factual allegations surrounding the actual tasing incident, plaintiff added the following allegations: That the jailers under Sheriff Lolley's supervision frequently and consistently used tasers upon detainees, that up to two or three detainees had been stunned in a week, that jailers had stunned detainees up to seven times in order to secure their compliance, that a jailer had stunned a person in retaliation for saying something displeasing, that a jailer had stunned a man who was sitting on a toilet, that jailers had threatened inmates to frighten them and that a deputy had stunned an inmate severely to force him to enter the jail. (Doc. 22, ¶ 20).  Plaintiff also alleges that Sheriff Lolley failed was informed by family members of the tasings and was "aware of some of these many incidents, but failed to stop them." (Id., ¶ 22).[17]

In examining the factual allegations in the complaint, the court,

> must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity. GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir.1998). The complaint must allege the relevant facts "with some specificity." Id. "[M]ore than mere conclusory notice pleading is required···· [A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984). See also Veney v. Hogan, 70 F.3d 917, 922 (6th Cir. 1995) (holding that complaint must "include the specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity").

---

[17]  Plaintiff alleges that Sheriff Lolley "as a matter of policy and practice" and with "deliberate indifference" failed to adequately discipline, train, or otherwise direct" his deputies, including Deputy Jackson, "concerning the rights of citizens, thereby causing the aforesaid officers in this case to engage in the unlawful conduct described above." (Id., ¶ 23).  Plaintiff also alleges that "as a matter of policy and practice" and with "deliberate indifference", Sheriff Lolley has "failed to properly sanction or discipline" his deputies, including Deputy Jackson "for violations of the constitutional rights of citizens, thereby causing police and deputies, including the aforesaid officers in this case, to engage in unlawful conduct." (Doc. 22, ¶ 24).

Moreover, in reviewing a motion to dismiss, we need only accept "well-pleaded facts" and "reasonable inferences drawn from those facts." Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." Marsh v. Butler County, 268 F.3d 1014, 1036 n. 16 (11th Cir. 2001). We must also keep in mind the fact that "[w]e generally accord ⋯ official conduct a presumption of legitimacy." United States Dep't of State v. Ray, 502 U.S. 164, 179, 112 S.Ct. 541, 550, 116 L.Ed.2d 526 (1991)."must keep in mind the heightened pleading requirement for civil rights cases, especially those involving the defense of qualified immunity".

Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003).

Construing the allegations of fact in the light most favorable to plaintiff and presuming they are true, the court finds that plaintiff has failed to allege facts sufficient to withstand Sheriff Lolley's motion to dismiss.  As to policy, custom or practice of failing to adequately train the deputies on the use of tasers, plaintiff's allegations do establish that tasers were used at the jail, however, plaintiff's allegations do not indicate whether these tasing incidents occurred for the purpose of punishment or in a good faith effort to maintain order or safety.  Alleging the fact that inmates have been tased does not establish that the tasings occurred for an unconstitutional reason. Tasing is not per se unconstitutional.

Moreover, the allegations do not establish that the tasing incidents were "obvious, flagrant, rampant and of continued duration" such that would establish a "widespread abuse sufficient to notify the supervising official". Brown, 906 F.2d at 671.  Plaintiff alleges that family members informed Sheriff Lolley of the tasing incidents and that he ignored their warnings and thus acted with deliberate indifference to a known risk.  A prison official cannot be deemed deliberately indifferent under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn [the reports from family members] that a substantial

28

risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114

S.Ct. 1970.  Recognizing the subjective element of the deliberate indifference analysis and

accepting as true plaintiff's allegations that family members told Sheriff Lolley, those allegations

are not sufficient to establish that because Sheriff Lolley had knowledge that inmates had been

tased, he also drew the inference from that knowledge that the tasing incidents were an excessive

risk to the inmates health or safety, and then disregarded that knowledge.  In other works,

plaintiffs have not alleged facts that show the other tasings were administered in an

unconstitutional manner or that Sheriff Lolley had any notice of unconstitutional tasings.  <u>See</u>

<u>Brooks v.Scheib</u>, 813 F.2d 1191, 1193 (11th Cir. 1987) (Plaintiff failed to demonstrate that past

complaints of police misconduct had any merit and "the number of complaints bears no relation

to their validity".)

In regard to failing to train Deputy Jackson, plaintiff failed to allege that Deputy Jackson

had been involved in any prior misconduct such that would demonstrate the need to supervise or

train him as to the use of tasers or to put Sheriff Lolley on notice that his failure to train Deputy

Jackson would result in a constitutional violation. <u>See</u> <u>Cook ex rel. Estate of Tessier v. Sheriff of</u>

<u>Monroe County, Fla.</u>, 402 F.3d 1092, 1116 (11th Cir. 2005) (holding that a §1983 claim against a

county sheriff was properly dismissed where the allegations in the complaint failed to establish

subjective knowledge, of the alleged risk of serious harm resulting from failure to train or

supervise jail deputies); <u>see</u> <u>also</u> <u>Grech v. Clayton County, Ga.</u>, 335 F.3d 1326, 1330 n. 6 (11th

Cir. 2003) ("A single incident would not be so pervasive as to be a custom or practice."); <u>Young</u>

<u>v. City of Augusta, Ga. Through DeVaney</u>, 59 F.3d 1160, 1169 (11th Cir. 1995) (plaintiff's claim

that custom, practice or policy regarding medical care of inmates caused his damages  "will

mandate proof that the alleged violations were not isolated instances").

In consideration of the heightened pleading standard, the court finds that plaintiff has failed to allege facts sufficient to establish a causal connection between Sheriff Lolley actions and Deputy Jackson's alleged use of excessive force.

## VI.   Conclusion

For the reasons stated herein, Deputy Jackson's motion to dismiss on the basis of qualified immunity is **DENIED** and Chief Lolley's motion to dismiss on the basis of qualified immunity is **GRANTED.**

**DONE** this the 26th day of July, 2006

**s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**